Christian J.
delivered the opinion of the court.
This is a writ of error to a judgment of the Hustings court of the city of Richmond.
The case is before this court for the second time.
The accused was indicted in the said Hustings court, ■as accessory after the fact to a felony, of which one John Dull was convicted in said court. The.indiet.ment after setting out, in proper form, the felony com *954 mitted by the said John Dull, charged “that John-Wren” (the plaintiff in error), “well knowing the-said John Dull to have committed the said felony in form aforesaid; to-wit, since the said felony was committed in the year aforesaid, in the city aforesaid,, him the said John Dull did then and there unlawfully receive, harbor and maintain, against the peace and dignity of the commonwealth of Virginia.”
Under this indictment the accused was found guilty-at the Uovember term of the said Hustings court; and his fine assessed by the jury at one cent; and was sentenced by the court to twelve months imprisonment in the city jail; and to Igfior upon the public-streets, or other public works, for seven hours a day during said term of imprisonment. To that judgment-a writ of error was awarded by this court; and upon the hearing of said writ of error at the last term, the judgment was reversed, and the accused was remanded to the said Hustings court for a new trial.
It is proper to remark, that the judgment and opinion of this court upon the former hearing was confined to a single point; and that wa's that the instructions, given by the court were calculated to mislead the-jury, and were therefore erroneous. The opinion was confined to the single point, and the judgment was reversed upon that ground only.
At the February term of the said Hustings court,, the accused was again tried upon the same indictment;, was again found guilty, and his fine assessed by the-jury at $200; and was sentenced by the court to imprisonment for the period of ten months and until payment of said fine.
To this judgment a writ of error was awarded by-this court.
The counsel for the prisoner, in his petition for a. *955 writ of error, assigns two grounds of error: 1st. The granting, by the court, of the instructions asked for by the commonwealth’s attorney: and 2d. The overruling of his motion for a new trial.
The second assignment of errors will be disposed of first.
The court below refused to certify the facts proved because the evidence was conflicting; but certified all the evidence offered, both by the Commonwealth and the accused. According to the rules established by this court, in considering such a bill of exceptions, the court will reject all the evidence offered by the prisoner in conflict with that offered by the Commonwealth, and determine, upon the testimony of the Commonwealth alone and all fair and legal inferences to be drawn therefrom, whether the offence charged in the indictment is made out and established by the proof: in other words, whether admitting all the facts proved by the Commonwealth, without reference to those proved by the accused, these facts constitute the offence charged in the indictment.
The accused is charged with accessorial guilt. He-is charged in the indictment with unlawfully receiving, harboring and maintaining John Dull, knowing him to have committed a felony. This charge constitutes what the law denominates “an accessory after the fact.” The common law definitely and distinctly defines who is such an offender. He is a person who knowing a felony to have been committed by another, receives, relieves, comforts or assists the felon. 1 Hale P. C. 618; 1 Arch. Crim. Pract. 78, and cases there cited.
The reason on which the common law makes a party in such a case criminal, is that the course of' *956 public justice is hindered, and justice itself is evaded by facilitating the escape of the felon.
To constitute oDe an accessory after the fact, three things are requisite: 1. The felony must be completed; 2. He must know that the felon is guilty; 3. He must receive, relieve, comfort or assist him. It is necessary that the accessory have notice, direct or implied,- at the time he assists or comforts the felon, that he has committed a felony. 2 Hawk. ch. 29, § 32. And although it seemed at one time to be doubted, whether an implied notice of the felony will not in some cases suffice, as where a man receive a felon in the same county in which he has been attainted, which is supposed to have been a matter of notoriety, it seems to be the better opinion, that some more particular evidence is requisite to raise the presumption of knowledge. 1 Hale 323, 622; 3 P. Wms. R. 496; 4 Black. Com. 3F.
But knowledge of the commission of the felony must be brought home to the accused, and whether he had such knowledge is always a question for the jury.
As to the receiving, relieving and assisting, one known to be a felon, it may be said in general terms, that any assistance given to one known to be a felon in order to hinder his apprehension, trial or punishment, is sufficient to make a man accessory after the fact; as that he concealed him in the house, or shut the door against his pursuers, until he should have an opportunity to escape; or took money from him to allow him to escape; or supplied him with money, a horse or other necessaries, in order to enable him to escape; or that the principal was in prison, and the jailer was bribed to let him escape; or conveyed instruments to him to enable him to break prison and -escápe. This and such like assistance to one known *957 to be a felon, would constitute a man accessory after the fact. 1 Hale 619, 621; 2 Hawk. c. 29, § 26. But merely suffering the principal to escape, will not make the party accessory after the fact; for it amounts at most but to a mere omission. 1 Hale 619; 9 H. iv., 1. Or if he agree for money not to prosecute the felon; or if knowing of a felony, fails to make it known to the proper authorities; none of these acts would be sufficient to make the party an accessory after the fact. If the thing done amounts to no more than the compounding a felony, or the misprision of it, the doer will not be an accessory. 1 Bishop, § 683; 1 Hale 371, 618. “ The true test (says Bishop, § 634) whether one is accessory after the fact, is to consider whether what he did was done by way of personal help to his principal, with the view of enabling his principal to elude punishment; the kind of help rendered appearing to be unimportant.
In Regina v. Chapple & others, 9 Car. & Payne R. 355, it was held that “to substantiate the charge of harboring a felon, it must be shown that the party charged did some act to assist the felon personally.” This decision is in strict accordance with the established principles of the common law. See Arch. Crim. Plead, and Pract. 78-9, note.
How applying these well recognized principles to the case before us, we are of opinion that the Commonwealth has failed to show that the plaintiff in error is an accessory after the fact to the felony committed by John Bull. Hpon the Commonwealth’s evidence, giving to it full force and effect, with all the fair and legal inferences to be drawn from it, and discarding the evidence offered by the accused, the case made out does not contain the constituent elements required to make the accused an accessory after the fact.
*958 The evidence shows that the accused is a detective officer, belonging to the police force of the city of Richmond. One Jos. M. Fowlkes, a gentleman from the country, who seems to have been an easy victim of certain swindlers and sharpers, was inveigled into the house of one John Dull, and induced by an accomplice of Dull to try his chances in the drawing of a bogus lottery. The whole thing was a cheat and swindle; and Mr. Fowlkes, after being induced to believe that he was drawing large sums of money, soon found himself the loser of five hundred and seventy dollars. When he left Dull’s house he went to see a friend (his commission merchant), who called a policeman near by, and he returned with the policeman to the scene of the swindle, but found the house closed, and the inmates gone. The policeman introduced him to Wren (the plaintiff in error), whom they met on the street, as a detective, and Fowlkes told him that he had been robbed of five hundred and seventy dollars, and said he wanted him to try to get his money back. Wren took Fowlkes in a carriage and carried him to the house of Knox, whom he called the chief detective of the city, and who it seems was a partner of Wren in the detective business. After some consultation with Knox, whom they found at dinner, it was agreed that they would meet at the St. Charles hotel that evening. Fowlkes says he did not ask Wren to arrest the parties, but told him he wanted to get his money back; that his object in employing Wren was to get his money. Wren and Fowlkes, after seeing Knox, separated to meet at the St. Charles hotel. In the meantime, after parting with Wren, Mr. Fowlkes met with an old friend, a lawyer, Mr. Sami. Page, and consulted with him, giving him an account of what had happened at Dull’s house. When near the St. Charles *959 hotel, and about to go into an office of a justice of the peace for the purpose of getting a warrant of arrest, Wren approached them, and said he had “ brought the old man down” (meaning Dull), and Page, Fowlkes and Wren went together into the St. Charles hotel, where they foundDull. Fowlkes demanded his money of Dull, saying he had been robbed of it at his house. This Dull denied, saying Fowlkes had lost it at gambling, while Fowlkes declared it had been stolen from him. Dull then said he had nothing to do with it; that he was not in the room when the money was lost, and told Fowlkes with an oath to go after those who had won the money. Wren was present and heard what passed, but was not asked to arrest Dull. Fowlkes asked Page to have him arrested; but Page said no, the time had not come yet.
Page’s testimony as to the interview between himself, Fowlkes, Dull and Wren, is the same 'as that -above detailed by Fowlkes. He says that Wren was not requested to arrest Dull; that he (Page) had no doubt Wren would have arrested Dull if he had been requested, and that he (Page) did not want Dull arrested then, because his arrest would have früstrated his plan in getting all the money he could out of Dull for his friend Fowlkes. The next time Wren appears on the scene is on the next day, when he informed Mr. George D. Wise, a practising attorney, that Knox wanted to see him at the Dispatch corner on Main street, and went with him to the corner, where they parted, and Knox took him (Wise) to the American -hotel, where he was shown into a' room occupied by Dull, Lewis and Purdy; and that Purdy gave him a sum of money to be paid over to Mr. Fowlkes. The parties then met at the Circuit court room, Page being present as the counsel of Fowlkes, and Wise as the *960 counsel of Dull. A certain sum of money was paid to Fowlkes, and the following receipt signed by him r
Richmond Va. Octo. 8th 1874. “Rec’d of John C. Dull two hundred and eighty-five dollars, in full settlement of all demands and claims against the-house of Mr. Dull; hereby binding myself to make no more demands upon him, his house or any one else for any occurrence there: this is to be a settlement in full.
Signed Jos. M. Fowlkes.”
Wren was present at this interview, but took no part in it, sitting some distance off in the judge’s chair, but near enough to hear all that occurred. After the money was paid over Wren requested Page to see Fowlkes, and get him to pay him for his services. This Fowlkes refused to do.
Shortly after the money was paid Dull was arrested; Page having in his pocket, both the evening before at St. Charles Hotel and at the interview at the Circuit court room, a warrant for the arrest of Dull. But Wren was never requested either by Page or Fowlkes to serve the writ. After the arrest of Dull, Page met with Wren, who said to him with an oath, “Don’t you think that old fool has gone and had Dull arrested. If Dull is to be shown up then all shall be shown up.”
The only other testimony connecting Wren with Dull, is that of Captain Disney, a police officer; who testified as follows: “ That soon after Dull’s arrest Wren came to the station house, and was carrying Dull into witness’ private office, when witness stopped him; and Wren said he wanted a private interview with him; but witness refused to allow such interview ; that immediately afterwards when witness was *961 searching another prisoner, he saw Dull attempting to slip something in Wren’s hand; which he also stopped; thought it was money hut could not say. Wren said to Dull, when Disney was afterwards searching him, anything you give Captain Disney will be safe. When witness refused the private interview with Dull, Wren said “never mind the Chief will be up here presently; and said with an oath, he would have Dull bailed out if it cost ten thousand dollars.” This is all the testimony connecting Wren in any way with Dull; and we are constrained to say, that whatever evidence there may be, tending to show that he was guilty of either compounding a felony, or of misprision of felony, there is no evidence sufficient in law to show that he gave any assistance to Dull, or any personal aid of any kind,.to hinder his apprehension, trial or punishment. On the contrary he brought Dull into the presence of his prosecutor and his counsel; and though informed by Page that he intended to get a warrant for Dull’s arrest, he did not inform Dull of it. He. advised Page, it is true, not to take out a warrant at once; and Page concurred with him in that view, thinking it would frustrate his design in getting the money back. His object, as was that of Page, was to get the money of which Powlkes had been swindled. But there is no evidence to show that his design was to enable Dull to elude or escape punishment. His failure to make the arrest himself, nor his effort, or expressed purpose to get him bailed after his arrest, nor his threat that as Dull is to be shown up others should be shown up also, none of these acts constitute Wren an accessory after the fact to the felony committed by Dull. If, knowing that a felony had been committed, he concealed it, then he is guilty of misprision of felony. If, knowing a felony to be com *962 mitted he concealed it, or forebore to arrest and prosecute the felon, for fee or reward, then he is guilty of compounding a felony. Both of these are grave offences; but they do not (if proved) constitute a party an accessory after the fact. This view of the case makes it unnecessary to pass upon the 1st assignment of error: -
The court is therefore of opinion, that the Hustings court erred in not setting aside the verdict of the jury as contrary to the law and the evidence. The judgment must therefore be reversed, and the case be remanded to the said Hustings court for a new trial to be had therein in conformity with the foregoing opinion.
Judgment reversed.